UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA ANGUIANO-TAMAYO, | Case No.  18-cv-04598-JSC |
| Plaintiff, | |
| v. | **ORDER RE: MOTION FOR JUDGMENT ON THE PLEADINGS** |
| WAL-MART ASSOCIATES, INC., et al., | Re: Dkt. No. 41 |
| Defendants. | |

Plaintiff filed this putative class action in 2018.[1]  (Dkt. No. 1.)[2]  In the operative complaint, she brings claims under California Labor Code §§ 226 and 2698 against her employer.  (Dkt. No. 14.)  Defendants moved to dismiss for failure to state a claim.  (Dkt. No. 23.)  The Court denied the motion to dismiss but, in the alternative, stayed the case as duplicative of an earlier-filed case then pending in this District.  (Dkt. No. 30.)  The earlier-filed case resolved in 2021, and now before the Court is Defendants' motion for judgment on the pleadings.  (Dkt. No. 41.)  After carefully considering the parties' briefing, and having had the benefit of oral argument on March 17, 2022, the Court GRANTS the motion as explained below.

**BACKGROUND**

I.     *Magadia*

A.     **Complaint Allegations**

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 8, 12.)

[2] Record citations are to material in the Electronic Case File ("ECF") in Case No. 18-cv-04598-JSC, unless otherwise noted; pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

1  In 2016, Roderick Magadia filed a putative class action in state court against his former

2  employer Wal-Mart.  (*Magadia v. Wal-Mart Associates, Inc.*, No. 5:17-cv-00062-LHK, Dkt. No.

3  1-1.)  Magadia alleged three violations of the California Labor Code:

4  (1) that Walmart's wage statements violated Labor Code § 226(a)(9)
   because its adjusted overtime pay does not include hourly rates of pay
5  or hours worked; (2) that Walmart violated § 226(a)(6) by failing to
   list the pay-period start and end dates in its Statements of Final Pay;
6  and (3) that Walmart's meal-break payments violated § 226.7 because
   it did not account for MyShare bonuses when compensating
7  employees.

8  *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 673 (9th Cir. 2021); (*see* No. 5:17-cv-00062-

9  LHK, Dkt. No. 1-1 ¶¶ 24–32).  His fourth claim was for penalties for all three violations.  *See*

10  *Magadia*, 999 F.3d at 673.  Wal-Mart removed to federal court.  (No. 5:17-cv-00062-LHK, Dkt.

11  No. 1.)

12  The Section 226(a)(9) claim concerned an item labelled "OVERTIME/INCT" on

13  employees' wage statements.  INCT stands for "incentive."  *See Magadia v. Wal-Mart Assocs.,*

14  *Inc.*, 319 F. Supp. 3d 1180, 1183 (N.D. Cal. 2018) (district court's partial summary judgment

15  order).  The OVERTIME/INCT item operates as follows:

16  Walmart pays its employees and issues wage statements every two
   weeks.  Walmart also voluntarily offers quarterly "MyShare" bonuses
17  to high-performing employees.  Walmart reports these quarterly
   bonuses on qualifying employees' wage statements as "MYSHARE
18  INCT."

19  Besides the bonus itself, California law requires Walmart to adjust the
   rate of overtime pay it awards employees to account for these
20  bonuses.  That's because California considers an employee's bonus
   to be part of the employee's "regular rate of pay" when calculating
21  overtime rates.  Thus, if a Walmart employee receives a MyShare
   bonus and worked overtime during that quarter, the employee must
22  receive an adjusted overtime pay because of that MyShare bonus.
   Walmart calculates this adjusted overtime pay using a formula that
23  includes the number of hours the employee worked each pay period
   of the quarter and the employee's overtime rate.  Walmart lists this
24  adjusted overtime pay on its employee's wage statement as
   "OVERTIME/INCT."  Walmart's OVERTIME/INCT item appears
25  as a lump sum on the wage statement issued at the end of the quarter,
   with no corresponding "hourly rate" or "hours worked."

26

27  *Magadia*, 999 F.3d at 672; *see Magadia*, 319 F. Supp. 3d at 1183 (district court's partial summary

28  judgment order).  Section 226(a)(9) provides that "[a]n employer . . . at the time of each payment

2

of wages, shall furnish to his or her employee . . . an accurate itemized statement in writing" that includes "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a)(9). Magadia alleged that the OVERTIME/INCT item violated Section 226(a)(9) because it was a lump sum and did not include "hours worked" or an "hourly rate." *Magadia*, 999 F.3d at 673.

The Section 226(a)(6) claim concerned the Statement of Final Pay that Wal-Mart gave employees whose employment ended. At the time of termination, Wal-Mart gave an employee their final paycheck and a "Statement of Final Pay." *Id.* at 672. Later, on the employee's typical semimonthly pay day, Wal-Mart issued a final wage statement that listed the dates for which the employee had been paid with their final paycheck. *See id.* at 672–73. Magadia alleged that the Statement of Final Pay violated Section 226(a)(6) because it did not list "the inclusive dates of the period for which the employee was paid." Cal Lab. Code § 226(a)(6).

Finally, the Section 226.7 claim concerned how Wal-Mart calculated its payments to employees who did not get a meal break. Section 226.7 requires that if an employer fails to provide a required meal break, it must pay the employee "one additional hour of pay at the employee's regular rate of compensation. *Id.* § 226.7. Magadia alleged that the calculation violated Section 226.7 because it used the employee's base hourly rate of pay without factoring in MyShare bonuses. *Magadia*, 999 F.3d at 673; *see Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp.3d 1058, 1077–78 (N.D. Cal. 2019) (district court's order following bench trial).

**B. Procedural History**

In January 2018, the district court certified classes on all three claims:

> Meal Period Regular Rate Class: All current and former California non-exempt retail store employees of [Wal–Mart] who received non-discretionary remuneration, including "MYSHARE INCT," and was paid any meal period premium payments in the same period that the non-discretionary remuneration was earned, at any time between December 2, 2012, through the present.

> OVERTIME/INCT Wage Statement Class: All current and former California non-exempt employees of [Wal–Mart] who received "OVERTIME/INCT," at any time between December 2, 2015, through the present.

> Final Wage Statement Class: All former non-exempt employees who

United States District Court
Northern District of California

United States District Court
Northern District of California

1    worked for [Wal–Mart] in the State of California and whose
2    employment terminated (whether voluntarily or involuntarily) at any
     time from December 2, 2015 to the present.

3    *Magadia v. Wal-Mart Assocs., Inc.*, 324 F.R.D. 213, 227 (N.D. Cal. 2018) (district court's class

4    certification order).  In May 2018, the court granted Magadia's motion for partial summary

5    judgment.  *Magadia*, 319 F. Supp. 3d 1180 (district court's partial summary judgment order).

6         In June 2018, in a joint case management conference statement, Wal-Mart sought leave to

7    file a motion for reconsideration of the court's order granting partial summary judgment, based on

8    a recent California Court of Appeal decision, *Canales*.  (No. 5:17-cv-00062-LHK, Dkt. No. 129 at

9    3); *see Canales v. Wells Fargo Bank, N.A.*, 234 Cal. Rptr. 3d 816 (Cal. Ct. App. 2018).  The

10   district court denied "any motion for reconsideration by [Wal-Mart] that is based on *Canales*."

11   (No. 5:17-cv-00062-LHK, Dkt. No. 130 at 2.)  In the same statement, Magadia sought leave to

12   amend his complaint:

13        In addition, as this is [a] new defense raised by Defendant, Plaintiff
14        will request to add a new theory of liability for violation of Labor
          Code § 226(a) to the Complaint.  Significantly, this is not a new claim
15        or cause of action, but an alternative theory of liability in response to
          Walmart's attempt to raise a new affirmative defense.

16   (No. 5:17-cv-00062-LHK, Dkt. No. 129 at 4.)  The district court denied the request as follows:

17        In light of the advanced stage of litigation in this case, as well as the
18        Court's denial of Defendant's request for leave to file a motion for
          reconsideration based on *Canales*, Plaintiff may not add new theories
19        of liability to Plaintiff's complaint and Defendant may not add a new
          affirmative defense based on *Canales*.

20   (No. 5:17-cv-00062-LHK, Dkt. No. 130 at 3.)

21        In response to the district court's denial of leave to amend, Magadia's counsel filed the

22   instant action on behalf of a different employee, Ana Anguiano-Tamayo, in July 2018.  (Dkt. No.

23   1.)  Thereafter, Magadia filed an administrative motion to consider whether the two cases are

24   related, on the basis that they share overlapping factual allegations regarding Wal-Mart's wage

25   statements and arise from the same transaction.  (No. 5:17-cv-00062-LHK, Dkt. No. 134.)  Wal-

26   Mart opposed on the grounds that the cases "assert unique theories of liability": "*Anguiano-*

27   *Tamayo* challenges how certain wage statements reflect pay periods, while *Magadia* challenges

28   how certain wage statements reflect the applicable hourly rates and hours worked."  (No. 5:17-cv-

1    00062-LHK, Dkt. No. 136 at 2.)  The district court denied the request to relate in a docket entry

2    without a written order.  (Dkt. No. 158.)

3        Following a bench trial in late 2018,

4            the district court found that Magadia in fact suffered no meal-break
             violation and decertified that class.  Even so, the district court allowed
5            Magadia to still seek [] penalties on that claim based on violations
             incurred by other Walmart employees.  The district court then ruled
6            against Walmart on the three claims and awarded Magadia and the
             two remaining classes over $100 million in damages and penalties.
7

8    *Magadia*, 999 F.3d at 672; *see Magadia*, 384 F. Supp. 3d 1058 (district court's order following

9    bench trial).  On appeal, the Ninth Circuit reversed the judgment on the Section 226(a)(9) and

10   226(a)(6) claims and instructed the district court to enter judgment for Wal-Mart.  *Magadia*, 999

11   F.3d at 682.  The Ninth Circuit also vacated the judgment on the Section 226.7 claim because

12   Magadia lacked standing and instructed the district court to remand the claim to state court.  *Id.*

13   The district court did so on November 5, 2021, and thus *Magadia* has fully resolved.  (No. 5:17-

14   cv-00062-LHK, Dkt. No. 229.)

15   **II.    *Anguiano-Tamayo***

16       **A.    Complaint Allegations**

17           In the instant case's operative complaint, Plaintiff alleges that Defendants failed to provide

18   their non-exempt California employees accurate itemized wage statements based on Defendants'

19   arguments in *Magadia* regarding the OVERTIME/INCT item of pay.  (Dkt. No. 14 ¶ 14.)  Plaintiff

20   asserts that Defendants "conclusively admitted" in *Magadia* "that the 'OVERTIME/INCT' item of

21   pay is a wage payment for various prior pay periods."  (*Id.*; *see id.* at 10–27 (Defendants' motion

22   for partial summary judgment in *Magadia*).)  Yet, the wage statements issued to Plaintiff and the

23   putative class that contain the OVERTIME/INCT item of pay "list only the current pay period

24   dates." (*Id.* ¶ 22.)  Thus, Plaintiff alleges that Defendants' wage statements violate Section

25   226(a)(6) because they "do not list the actual pay period dates for which the 'OVERTIME/INCT' .

26   . . is being paid."  (*Id.* ¶¶ 14, 22.)  Plaintiff brings a second claim for penalties for the Section

27   226(a)(6) violations.  (*Id.* ¶¶ 24–28.)  Plaintiff's proposed class consists of "all current and former

28   California non-exempt employees of Defendants who received 'OVERTIME/INCT,' at any time

5

between July 30, 2017, through the present." (*Id.* ¶ 10.)

## B. Procedural History

Defendants moved to dismiss for failure to state a claim, on the grounds that Section 226(a)(6) does not require that wage statements "include dates in which prior overtime hours were worked." (Dkt. No. 23 at 3.) The Court denied dismissal because Plaintiff plausibly alleges that "'the OVERTIME/INCT of pay is a wage payment for various prior pay periods,' but the wage statements containing that pay item list a *different* pay period—the current one." (Dkt. No. 30 at 5–6 (quoting operative complaint).) Thus, Plaintiff plausibly alleges a violation of Section 226(a)(6)'s requirement that the wage statement list "the inclusive dates of the period for which the employee was paid." Cal Lab. Code § 226(a)(6).

Defendants alternatively argued that Plaintiff's case was impermissible claim splitting with *Magadia*. (Dkt. No. 23.) The Court held that the two cases share the same causes of action and requested relief:

> . . . Plaintiff's complaint in this action is based on the exact wage statements at issue in *Magadia*; indeed, the complaint involves the same portion of the wage statements—those involving the OVERTIME/INCT item of pay. It is undisputed that the only difference between the complaints is whether that underlying conduct violated a distinct subpart of Labor Code § 226(a)—here, section 226(a)(6), and in *Magadia*, section 226(a)(9).

(Dkt. No. 30 at 8–9.) The Court noted:

> [T]here is no indication that Plaintiff could not have raised the instant section 226(a)(6) claim in *Magadia* had it been brought earlier in that case. Plaintiff's counsel's attempt to cure the failure to do so by bringing a new cause of action is precisely the type of litigation tactic that the claim-splitting doctrine precludes.

(*Id.* at 11.) The Court also held that the parties are the same, because Plaintiff was a member of the *Magadia* OVERTIME/INCT Wage Statement Class. Thus, both elements of claim splitting were met. The Court stayed this case pending resolution of *Magadia*. (*Id.* at 12.)

## DISCUSSION

"Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)

United States District Court
Northern District of California

(cleaned up); *see* Fed. R. Civ. P. 12(c).  Like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a motion under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint.  *Chavez*, 683 F.3d at 1108.  Defendants argue they are entitled to judgment as a matter of law because the *Magadia* final judgment precludes Plaintiff's claims.

## I.     Claim Preclusion

"[C]laim preclusion[] bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.  The doctrine is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).  Here, there is no dispute that *Magadia* is a final judgment on the merits and that the parties have identity or privity: Defendants were parties to *Magadia* and Plaintiff was a class member at the time of judgment. Thus, the inquiry is whether there is an "identity of claims," that is, "whether the two suits arise out of the same transactional nucleus of facts."  *Owens*, 244 F.3d at 714.  The transaction test is the same as the test for claim splitting that the Court applied at an earlier stage of this case, (Dkt. No. 30).  *See Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 689 (9th Cir. 2007) (explaining that claim splitting "use[s] the transaction test, developed in the context of claim preclusion"), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008).

Litigated class action judgments, like this one, are subject to the usual transaction test.  *See* William B. Rubenstein, *Newberg on Class Actions* § 18:19 (5th ed. Dec. 2021 update) ("The scope of a judgment in a litigated class action parallels the scope of any litigated judgment: it will preclude claims arising out of the same transaction and occurrence."); *see also Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("There is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

Class action settlement agreements, on the other hand, are subject to a slightly distinct "identical factual predicate" test.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).  *But see Newberg on Class Actions* § 18:19 ("In giving meaning to what constitutes an 'identical factual predicate,' courts have generally fallen back on the broad conclusion that the test requires

only 'a common nucleus of operative fact,' and hence have equated the test with the normal transactional test underlying the scope of claim preclusion itself."); *Kazi v. PNC Bank, N.A.*, No. 18-cv-04810-JCS, 2021 WL 965372, at \*15 (N.D. Cal. Mar. 15, 2021) ("Courts have generally interpreted that requirement to coincide with the general res judicata test of whether claims share a 'common nucleus of operative fact.'"). "A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." *Hesse*, 598 F.3d at 590; *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) (holding that class action settlement agreement precluded later claim with a "different theory of anti-competitive conduct," but "identical" "price-fixing interchange rates[] and [] underlying injury"). To the extent that "identical factual predicate" is a different standard than the transaction test, it is inapplicable here because *Magadia* was litigated to judgment.

### A.    Transaction Test

"Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992); *see Owens*, 244 F.3d at 714. The transaction test has four criteria, the last of which is most important:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Adams*, 487 F.3d at 689 (cleaned up).

Plaintiff's Section 226(a)(6) claim arises from the same transactional nucleus of operative fact as *Magadia*'s Section 226(a)(9) claim. As explained in the Court's order finding the claims duplicative, (Dkt. No. 30 at 8–9), Plaintiff's claim challenges the same portions of the same wage statements as *Magadia*. Thus, it arises from the same transaction. *See Owens*, 244 F.3d at 714 ("Both causes of action are predicated on racial discrimination and allege the same circumstances

8

United States District Court
Northern District of California

1   regarding Appellants' terminations.  Although the current action also alleges retaliation and hostile

2   work environment, . . . the additional allegations . . . are related to the same set of facts as the

3   allegations in plaintiffs' [earlier] complaint for wrongful discharge.").  The same facts are at issue

4   in both claims, distinguishing Plaintiff's case from *Rodriguez v. Taco Bell Corp.* and similar cases.

5   No. 1:13–cv–01498–SAB, 2013 WL 5877788, at *4 (E.D. Cal. Oct. 30, 2013).  The *Rodriguez*

6   plaintiffs alleged that their meal breaks were invalid because their employer required them to

7   remain on the premises, whereas the plaintiffs in the earlier-filed case alleged that they had to

8   work more than five hours before their first meal break.  The claims relied on different legal

9   theories *and* different facts: the facts that could prove employees were required to remain on the

10  premises are distinct from the facts that could prove how long they had to work before taking a

11  break.  *See also Hesse*, 598 F.3d at 591 ("Both involve claims that Sprint improperly billed

12  government taxes or fees to its customers, but they deal with different surcharges, imposed to

13  recoup different costs, that were alleged to be improper for different reasons.").  Here, by contrast,

14  the underlying facts are the same.

15          "The concern behind claim preclusion is that a plaintiff should not be able to relitigate the

16  same facts under a different legal theory."  *Hiser v. Franklin*, 94 F.3d 1287, 1292 (9th Cir. 1996).

17  Plaintiff acknowledges that her Section 226(a)(6) claim is an "alternative legal theory" to the

18  claims brought in *Magadia*, but argues that it could not have been brought in *Magadia*.  This

19  argument is unavailing because it conflates the issues whether the district court, at a particular

20  juncture in *Magadia*, granted leave to amend with whether the claim could have been brought in

21  the first place.  The procedural history indicates that Defendants' legal strategy in *Magadia*

22  prompted the class to develop an alternative theory of liability.  But nothing prevented the class

23  from developing that theory in time to assert it earlier in the life of *Magadia*.  As such, the district

24  court's denial of leave to amend is not a "formal jurisdictional or statutory barrier[]" of the kind

25  that can prevent claim preclusion.  *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 370 (2d

26  Cir. 1997); *see Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

27          By characterizing her Section 226(a)(6) claim as a response to Defendants' new

28  affirmative defense, Plaintiff hints that the alternative theory did not exist until *Canales*.  But

*Canales* simply elaborated the law of Section 226(a)(9). *See Magadia*, 999 F.3d at 681 (citing *Canales v. Wells Fargo Bank, N.A.*, 234 Cal. Rptr. 3d 816 (Cal. Ct. App. 2018)). That *Canales*, and Defendants' reliance on it, prompted the class to develop an alternative theory of liability does not mean that they could not have done so earlier. Plaintiff has not demonstrated that her claim is based on any new facts; rather, it is based on the same portions of the same wage statements at issue in *Magadia*. *Cf. Hesse*, 598 F.3d at 591 ("[The claim] is based on a different set of operative facts and is not merely an alternative remedy or theory of recovery.").

\* \* \*

Plaintiff's Section 226(a)(6) claim is based on the same transactional nucleus of fact as *Magadia*'s Section 226(a)(9) claim. Because the other two requirements for claim preclusion are met, Defendants have met their burden of proving Plaintiff's claim is precluded by *Magadia*. *See Owens*, 244 F.3d at 713–14. Plaintiff's second claim is likewise precluded because it merely seeks penalties for violations of the first claim.

## II.    Judicial Estoppel

Plaintiff urges the Court to invoke judicial estoppel, "an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Courts invoke judicial estoppel "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Id.* (cleaned up). Three factors may be relevant: whether the party's later position is "clearly inconsistent" with the earlier position; whether the earlier court relied on or accepted the party's position; and whether the party would derive an unfair advantage from being allowed to argue the later position. *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001)).

Defendants have taken somewhat inconsistent positions. In their opposition to Magadia's motion to relate *Magadia* and *Anguiano-Tamayo*, Defendants argued that the two cases "assert unique theories of liability":

United States District Court
Northern District of California

10

1

2

3

4

> *Magadia* and *Anguiano-Tamayo* both challenge Walmart's wage
> statements. But the similarity ends there. In fact, the lead plaintiff in
> both cases is different. The class period in both cases is different.
> And most importantly, the alleged wage statement violation is
> different. . . . In short, these two cases do not present "substantially
> the same" claims.

5

6

7

8

9

10

11

12

(No. 5:17-cv-00062-LHK, Dkt. No. 136 at 2.) Thus, in support of their main argument that the cases have different legal theories, Defendants also at least suggested that the factual context, including the named plaintiff and class period, is different. Now they argue that the two cases have an identical transactional nucleus of fact. However, as explained above, that Plaintiff's Section 226(a)(6) claim is an alternative theory of liability does not save it from claim preclusion. Even if the theories are unique, they arise out of the same transactional nucleus of fact. Thus, Defendants' somewhat inconsistent positions do not squarely implicate the claim preclusion issue here.

13

14

15

16

17

Additionally, Plaintiff has not shown that Defendants were able to use those opposing positions to gain a tactical advantage. While the *Magadia* district court sided with Defendants and declined to relate the two cases, that decision did not hand Defendants any substantive victory on the merits of *Magadia* or of Plaintiff's current claim. The only effect of the decision was that *Magadia* proceeded with the district court judge and Plaintiff's case proceeded with this Court.

18

Accordingly, the Court declines to invoke judicial estoppel.

19

\* \* \*

20

21

Because *Magadia* precludes Plaintiff's claims, Defendants are entitled to judgment as a matter of law. *See Chavez*, 683 F.3d at 1108.

22

**CONCLUSION**

23

Defendants' motion for judgment on the pleadings is GRANTED.

24

This Order disposes of Docket No. 41.

25

**IT IS SO ORDERED.**

26

Dated: March 21, 2022

27

28

JACQUELINE SCOTT CORLEY
United States Magistrate Judge